**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION**

LOUISE HALE, )
)
Plaintiff, )
)
v. )           No. 16-cv-3191
)
BOARD of TRUSTEES )
of SOUTHERN ILLINOIS )
UNIVERSITY SCHOOL )
of MEDICINE, )
)
Defendant. )

## OPINION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Defendant Board of Trustees of Southern Illinois University School of Medicine's (SIU) Motion for Summary Judgment (d/e 21) (Motion). The parties consented to proceed before this Court. Consent to the Exercise of Jurisdiction by a United States Magistrate Judge and Reference Order entered November 21, 2016 (d/e 19). For the reasons set forth below, the Motion is ALLOWED.

## STATEMENT OF FACTS

Pro se Plaintiff Louise Hale started working for SIU as a Licensed Practical Nurse II (LPN II) on June 29, 1995. Hale is of Mexican national origin. The LPN II position was the higher of two civil service positions at

SIU classified for Licensed Practical Nurses.  From November 29, 2004

until November 12, 2014, Hale worked at the SIU Internal

Medicine/Dermatology Ambulatory Clinic (Dermatology Department). <u>SIU

Undisputed Facts</u> ¶¶ 1-4.[1]

Hale's position description stated that part of her duties included

"Reports to and assists RN in care."  <u>Motion</u>, Exhibit 1, <u>Position Description

dated August 7, 2014</u>.  The term "RN" refers to Registered Nurse.  Hale

disputes that her duties included reporting to RNs.  She states that she only

reported to the Charge Nurse/Supervisor.  She states that she did not

report to any other staff member who was not the Charge

Nurse/Supervisor, including RNs.  <u>Response to Motion for Summary

Judgment (d/e 23) (Response)</u>, at ¶ 5.

On November 19, 2012, Hale was suspended for one day (One-Day

Suspension).  Angie Doolin, SIU's Assistant Director of Employee and

Labor Relations, authorized the One-Day Suspension.  The Disciplinary

Suspension Notice stated that Hale was suspended for a "lapse of

judgment."  <u>Motion</u>, Exhibit 2, <u>Disciplinary Suspension Notice</u>. According to

Doolin, Hale was suspended for misleading her supervisor and engaging in

unprofessional conduct/compromising employee confidentiality in a

---

[1]The Court accepts SIU's Undisputed Facts if Hale concurs that the facts are undisputed.

conversation with an SIU physician.  <u>Motion</u>, attached <u>Declaration of Angie Doolin (Doolin Declaration)</u>, ¶ 10.  Hale disputes that she made any lapse of judgment or breached any confidentiality.  <u>Response</u> ¶ 9.

Doolin stated in her declaration that she did not consider Hale's ethnicity in determining that the suspension was warranted.  <u>Doolin Declaration</u>, ¶ 10.  Hale disputes this, but presented no specific evidence to support her opinion.  Hale said she had a contentious relationship with Doolin because Hale was a Union Steward.  Hale stated that she "always felt Ms. Doolin made belittling comments to me due to my ethnicity."  <u>Response</u>, ¶ 10.  Hale did not present any evidence of any specific belittling comments.

On December 6, 2013, Doolin suspended Hale for ten days (Ten-Day Suspension).  The stated reason given was, "insubordination—continued failure to follow chain of command."  <u>Motion</u>, Exhibit 3, <u>Disciplinary Suspension Notice dated December 6, 2013</u>.  Doolin did not use any racial epithet with Hale or tell Hale she was being disciplined because of her Hispanic heritage.  <u>SIU Undisputed Fact</u> ¶ 18, citing p. 52 of Hale's deposition.

On March 25, 2014, Hale filed a Charge of Discrimination (March 2014 Charge) based on the Ten-Day Suspension.  On April 21, 2014, Hale

received a Right-to-Sue Letter from the EEOC.  <u>Motion</u>, Exhibit 11, <u>Notice</u>

<u>of Suit Rights dated April 21, 2014 (2014 Right to Sue Letter)</u>.  Doolin never

said anything to Hale about the March 2014 Charge.  <u>SIU Undisputed Fact</u>

¶ 17, citing p. 51-52 of Hale's deposition.

The 2014 Right-to-Sue Letter stated that Hale had ninety days to file

suit under Title VII on the March 2014 Charge.  On August 5, 2014, the

Illinois Department of Human Rights sent Hale a Notice of Dismissal for

Lack of Jurisdiction (IDHR Notice).  <u>Motion</u>, Exhibit 12, <u>IDHR Notice</u>.  The

IDHR Notice told Hale she had ninety days to file suit under state law on

the March 2014 Charge.  Neither party presented evidence that Hale filed

suit on claims contained in the March 2014 Charge.

Hale also grieved the Ten-Day-Suspension pursuant to her union's

collective bargaining agreement (CBA).  During one of the disciplinary

meetings, Doolin told Hale she should go back where she came from if she

did not like Central Illinois.  Hale agreed that Doolin made this comment in

the context of Hale stating her belief that SIU should follow the same

practices that were followed at Hale's previous employer William Beaumont

Army Medical Center in El Paso, Texas.  <u>SIU Undisputed Fact</u>, ¶ 19.  Hale

believed Doolin's statement was unprofessional and was not the way an

employer's Human Resources department should respond to an

employee's concern.  Response, ¶ 19.   The outcome of the grievance is unclear from the evidence presented.

On September 9, 2014, RN Shirley Lotz sent an email to Shawn Melissa Pierson, Charge Nurse/Supervisor in the Dermatology Department. Lotz stated a number of complaints about Hale's actions at work on August 29, 2014.  Lotz and Hale worked the same shift that day.  Lotz stated that Hale was trying to get Lotz into trouble.  Lotz claimed that Hale was supposed to be handling the phones for the department, but left to demonstrate to some interns a process referred to as "slushes."  Motion, Exhibit 13, Email from Lotz to Pierson dated September 9, 2014.  Hale disputes Lotz's statements in the email.  Response, ¶ 21.

On October 29, 2014, Lotz filed a report with the SIU security department about an incident that day involving Hale and Lotz.  She stated that she told Hale to retrieve a patient from the waiting room and escort the patient to an examination room.  Lotz said that Hale said she was busy. Lotz got the patient and escorted the patient to the room.  Lotz stated that as Lotz passed Hale in the hallway, Hale grabbed Lotz's lower arm or wrist and called Lotz "bossy."  Lotz told the security department that Hale told Lotz she had no right to tell Hale what to do and that she would not listen to

Lotz.  Lotz told the security department that she felt humiliated and disrespected.  Motion, Exhibit 4, Security Field Report.

Hale stated she was filling a supply cart at the time Lotz asked her to get the patient.  Hale stated that she was going to get the patient after she finished stocking the cart.  Hale stated that she did not take orders from any nurse other than the Charge Nurse/Supervisor.  She said Lotz had no right to order her around.  Hale told security personnel that she did not recall touching Lotz in any way, "but said she might have put her hand or arm on her arm or shoulder when she said she wanted to talk to her."  Hale also told security personnel that Lotz was a racist.  She told them that Lotz made racist comments in the past.  Response, ¶ 22 attached Security Field Report Supplemental.

On November 6, 2014, Hale was off work on medical leave.  She was on vacation from November 7–11, 2014.  While she was off work, her union steward Lisa Hensley met with her.  Hensley told Hale that SIU Human Resources was considering additional discipline against her because of the incidents with Lotz.  Hale Deposition, at 66-72.  Hensley told Hale that Human Resources investigator Teresa Smoot told Hensley that disciplinary action was imminent and termination of employment was likely.  Hensley asked Hale if she would be willing to accept six weeks of paid

administrative leave until December 31, 2014, and retire at that time. Hale could then retire with twenty years of service. Under the CBA, a covered employee with twenty years of service at retirement was entitled to full benefits, including fully paid health insurance until she became eligible for Medicare at age 65. Hale Deposition, at 67-68. Hale agreed. Hale states that she agreed while she was under duress fearing immediate termination of employment. Hale Response, ¶ 25.

On November 12, 2014, Hale completed a retirement form to retire effective December 31, 2014. SIU placed Hale on paid administrative leave from November 12, 2014 to December 31, 2014. She retired with full benefits on December 31, 2014. SIU Undisputed Fact, ¶ 25.

The parties disagree on where Hensley got the idea to offer Hale administrative leave and retirement with twenty years of service. Doolin claims that Hensley approached Human Resources with the idea. Doolin Declaration, ¶ 24.

Hale claims that Smoot contacted Hensley and suggested the retirement alternative to Hensley after Hale's supervisor and others met to discuss Hale's whistleblowing activity at SIU. Response, ¶ 23. According to Hale, Hale's supervisor Pierson met with Patty Young, RN; Cari Chaffey, RN; and Donna Vogt, Supervisor of SIU-Call Center (Meeting). The

Meeting participants discussed Hale's statements about two issues at SIU.

Hale spoke to Vogt about bed bugs in the SIU Call Center.  The Call Center

employees had called Hale to present their concerns to Vogt.  Hale talked

to Vogt about the problem.  According to Hale, Vogt had been spraying

Raid insecticide in the Call Center work area.  Hale told Vogt that spraying

Raid was not the proper protocol for handling bed bugs.  Vogt told Hale it

was none of her business.  Hale states that Vogt was so rude that she

referred the employees to Hensley.  Hensley ultimately filed the grievance

for the Call Center employees. According to Hale, Vogt was upset about

the grievance at the Meeting.   Response ¶ 23 and attached Grievance

dated September 22, 2014; Email from Stacia Gerding to Hensley dated

September 23, 2014, regarding incident reports of bed bugs;

Incident/Hazard Report dated September 19, 2014, regarding bed bugs at

the SIU Call Center; Email dated October 28, 2014, from Dee Kirby, RN,

BS, Director of Patient Safety & Risk Prevention distributing SIU bed bug

protocol.

According to Hale, the Meeting participants also discussed Hale's

statements regarding improper sterilization of surgical instruments.  Internal

Medicine brought surgical instruments to Dermatology for sterilization.

Instruments had to be "pre-cleaned" before sterilization.  Hale brought to

Nurse Young's attention that on several occasions Internal Medicine staff had not properly pre-cleaned the instruments before bringing them to Dermatology. Hale suggested that Internal Medicine have an in-service on how to clean instruments properly. Young told Hale not to worry about it. Young would take care of it. Response, ¶ 23.

Hale states that after the Meeting, Smoot suggested to Hensley that Hale agree to accept six weeks paid administrative leave and retirement on December 31, 2014. Response, ¶¶ 23-24.

## PROCEDURAL BACKGROUND

On June 28, 2016, Hale filed her Complaint in this matter. Hale used a pre-printed form. Complaint of Employment Discrimination (d/e 1) (Complaint). She checked the boxes indicating that she alleged employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Title VII), and 42 U.S.C. § 1981 (§ 1981). Complaint of Employment Discrimination (d/e 1) (Complaint), ¶ 7. She checked boxes to allege that she was discriminated:

"by terminating the plaintiff's employment;"

"by failing to promote her;"

"by failing to stop harassment;"

"by retaliating against the plaintiff because the plaintiff did something to assert rights protected by the laws;"

"by coercing, intimidating, threatening or interfering with the plaintiff's exercise of enjoyments of rights;" and

"with respect to compensation, terms, conditions, or privileges of employment."  Complaint ¶¶ 11(b),(c),(d),(e),(g),(h),(i).

In addition, Hale alleged in her own words:

> Hostile Work Environment being held in a room against my will.

> Retaliation for being a whistle blower reporting bed bugs on patients.  Improper cleaning of surgical equip.

> Racial discrimination, I was a member of AFSCME local 370 (union Steward & trustee

> Disabilities Act I'm diabetic, had breast CA even [with] a Dr's note had a hard time taking time off.

Complaint, ¶ 12.

Hale had filed a Charge of Discrimination on December 10, 2015 with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission.  She alleged the basis of her charge as "Forced resignation on November 17, 2014 because of national origin, Mexico."  She alleged the factual basis of the charge as:

1.   My national origin is Mexico;

2.     I performed the duties of Nurse II in accordance with
       Respondent's policies and expectations;

3.     On November 17, 2014, Respondent forced me to resign
       for the stated reasons of a false charge from another
       employee; and

4.     Similarly situated employees who are not of my national
       origin were treated differently under similar conditions.

Complaint, attached Charge of Discrimination.  She received a right to sue

letter on May 31, 2016.  Complaint, attached Notice of Rights to Sue.  Hale

filed this action on June 28, 2016.

On November 7, 2016, the District Court granted SIU's Motion to

Dismiss in part.  Opinion entered November 7, 2016 (d/e 17) (Opinion).

The District Court dismissed without prejudice for failure to exhaust

administrative remedies Hale's Title VII claims for failure to promote and

failure to stop harassment, and her claim of disability discrimination.  She

did not exhaust her administrative remedies because she did not include

these claims in her Charge of Discrimination.  Opinion, at 15-16.  The

District Court did not dismiss Hale's Title VII claim of forced resignation and

retaliation and her § 1981 claims.  Opinion, at 11-15.  Therefore, the

remaining claims are:

(1) employment discrimination by forced resignation under Title VII and

§ 1981;

(2) retaliation because asserted her rights protected by antidiscrimination laws under Title VII and § 1981;

(3) failure to promote under § 1981;

(4) failure to stop harassment under § 1981; and

(5) "retaliation for being a whistle blower reporting bed bugs on patients. Improper cleaning of surgical equip" (Whistleblower Claim).

## ANALYSIS

At summary judgment, the Defendant must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to Hale. Any doubt as to the existence of a genuine issue for trial must be resolved against SIU. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once SIU has met its burden, Hale must present evidence to show that issues of fact remain with respect to an issue essential to her case, and on which she will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In this case, Hale failed to present evidence to show that an issue of fact exists.

Title VII prohibits employment discrimination due to race, color, religion, sex, and national origin. 42 U.S.C. § 2000e-2. Section 1981 prohibits race discrimination in contracts. 42 U.S.C. § 1981. Hale claims discrimination based on her Mexican national origin, not race. The term "race" in § 1981, however, applies to discrimination based on national origin. Saint Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987); Bagwe v. Sedgwick Claims Management. Services, Inc., 811 F.3d 866, 879 (7th Cir. 2016).

Title VII and § 1981 employment discrimination cases have substantially the same elements. Hale must present evidence that (1) she was in a protected class, in this case a person whose national origin was Mexican, (2) she suffered an adverse employment action, and (3) SIU subjected her to the adverse employee action because of her Mexican national origin. See Nacify v. Illinois Dept. of Human Services, 697 F.3d 504, 509 (7th Cir. 2012).

Hale can present evidence on the third element at summary judgment through either the direct method or indirect method. McDonnell Douglas Corp. v. Green, 411 U.S. 792, (1973). The direct method requires Hale to present evidence that creates an issue of fact whether SIU's decision maker Doolin acted because of Hale's national origin as Mexican. The

evidence may be any type of competent admissible evidence, but it must be sufficient to allow a jury to infer prohibited discrimination. <u>Ortiz v. Werner Enterprises, Inc.</u>, 834 F.3d 760, 765 (7th Cir. 2016).

Alternatively, Hale may use the indirect method. Under the indirect method, Hale must present evidence that: (1) she was a member of a protected class, here Mexican national origin; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) a similarly situated person not in the protected class was treated better than she. If Hale presents evidence on each part of the indirect method, then SIU must present a non-discriminatory reason for the adverse action. If SIU presents such a reason, Hale must present evidence that the stated reason was a pretext. <u>Nacify</u>, 697 F.3d at 511-12.

Both the direct and indirect methods require Hale to present evidence that demonstrates an issue of fact that she suffered an adverse employment action. Hale fails to present evidence of any adverse employment actions. Hale alleges three adverse employment actions in her complaint: forced resignation, failure to promote, and failure to prevent harassment. <u>Complaint</u>, ¶¶ 11-12.[2]

---

[2] Hale did not allege any discrimination claims in this case for her One-Day Suspension or Ten-Day Suspension.

## FAILURE TO PROMOTE CLAIM

Hale presents no evidence regarding promotions. She agrees that SIU employed her at the higher of two possible civil service classifications for Licensed Practical Nurses. She does not present any evidence that she ever applied for any other type of promotion. Hale fails to present evidence that SIU ever denied her a promotion.

## FAILURE TO STOP HARRASSMENT CLAIM

Hale also presents no evidence of a failure to stop harassment. Hale alleges in her Complaint that she was not allowed to leave a room. Hale does not present any evidence regarding this allegation. She does not present any other evidence of harassment.

## FORCED RESIGNATION CLAIM

Hale presents evidence regarding the end of her employment. Hale resigned in November 2014, effective December 31, 2014. She alleges that she was forced to resign and the forced resignation constituted an adverse employment action. A forced resignation, or constructive discharge, can constitute an adverse employment action when an employer effectively tells a person to quit or be fired. E.E.O.C. v. University of Chicago Hospitals, 276 F.3d 326, 332 (7th Cir. 2002). In University of Chicago Hospitals, the plaintiff's supervisor told the plaintiff that she would

be discharged, and then the plaintiff came to work to find her belongings packed up and her office turned into a storage room. This evidence was sufficient to show an issue of fact that the plaintiff was constructively discharged. Id. at 332.

Hale's work area did not become a storage room. She was told she was likely to be subject to disciplinary action that would likely lead to discharge. A person who resigns under these circumstances is not constructively discharged and does not suffer an adverse employment action. Swearnigen-El v. Cook County Sheriff's Dept., 602 F.3d 852, (7th Cir. 2010); see Cigan v. Chippewa Falls School District, 388 F.3d 331, 334 (7th Cir. 2004). In Swearnigen-El, a corrections officer was suspended pending a discharge hearing for having sex with an inmate. He had also been arrested and charged criminally for having sex with the inmate. The corrections officer resigned before the discharge hearing occurred. He claimed constructive discharge. The Seventh Circuit held that the corrections officer was not constructively discharged. The Court stated that, "'the prospect of being fired at the conclusion of an extended process,' without more, does not constitute a constructive discharge." Swearnigen-El, 602 F.3d at 859 (quoting Cigan, 388 F.3d at 334). Swearnigen-El was more likely to lose his job through the disciplinary process than Hale was in

this case, but he was not constructively discharged because he resigned rather than participate in the disciplinary process.

In Cigan, a teacher retired because the school superintendent notified her that he would recommend that the school board not renew her employment at the end of the school year. Cigan, 388 F.3d at 332. The Seventh Circuit held that resignation or retirement after "notice of intent to commence a process leading to discharge" is not a constructive discharge. Cigan, at 333-34. See also Chapin v. Fort-Rohr Motors, Inc., 621 F.3d 673 (7th Cir. 2010). These cases establish that a person does not suffer an adverse employment action if she resigns rather than participate in a disciplinary process. Hale, therefore, did not suffer an adverse employment action when she resigned to avoid the prospect of another disciplinary proceeding even if that proceeding would likely lead to termination. SIU is entitled to summary judgment on Hale's Title VII and § 1981 discrimination claims.

## RETALIATION CLAIMS

Hale also asserts a claim for retaliation under Title VII and § 1981. Like discrimination, the elements for retaliation in an employment context are the same for both Title VII and § 1981. Smith v. Bray, 681, 888, 896 (7th Cir. 2012) reversed on other grounds, Ortiz, 834 F.3d at 764 (2016).

To establish an issue of fact for Hale's retaliation claim, Hale may use either the direct or indirect method.  Under the direct method, Hale must present evidence that: "(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two." Boston v. U.S. Steel Corp., 816 F.3d 455, 464 (7th Cir. 2016); 42 U.S.C. § 2000e-3.  Under the indirect method, Hale must present evidence that: "(1) she engaged in statutorily protected activity; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." Boston, 816 F.3d at 464.  If Hale presents such evidence, SIU must present a non-discriminatory reason for the adverse action.  If SIU does so, Hale must present evidence that the reason is a pretext. Id.

Hale engaged in protected activity.  She filed the March 2014 Charge which is a protected activity.  See 42 U.S.C. 2000e-3(a).

Hale also presents evidence that she spoke up about bed bugs and improperly cleaned surgical instruments in her Whistleblower Claim. Speaking about these matters are not protected activity.  They do not relate to illegal employment discrimination.  See Brown v. Advocate South

Suburban Hosp., 700 F.3d 1101, 1107 (7th Cir. 2012) ("Title VII prohibits retaliation for complaints about discrimination, not retaliation for complaints about other workplace issues" (citing Hamm v. Weyauwega Milk Products, Inc., 332 F.3d 1058, 1066 (7th Cir. 2003)).

Hale presents evidence which requires factual analysis regarding whether she suffered an adverse employment action sufficient to support her retaliation claim.  The term "adverse employment action" has a broader meaning in retaliation cases. To constitute an adverse employment action in a retaliation claim, the action must be materially adverse.  Hale must show that SIU's actions against her might dissuade a reasonable worker from making or supporting a charge of discrimination.  Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); see Brown, 700 F.3d at 1107-08.  The likelihood of a disciplinary action that would very probably lead to discharge might dissuade a reasonable worker from filing a charge of discrimination.  The evidence creates an issue on this point which requires analysis of the evidence presented by the parties.

Under the direct method, Hale failed to present evidence of a causal connection between the March 2014 Charge and the November 2015 message given by Hensley that disciplinary action was imminent and termination of employment was likely.  SIU presented evidence that the

likely discipline was connected to the incidents with Lotz. Hale presents evidence that the likely discipline was related to her Whistleblower charge about bed bugs and improperly cleaned surgical instruments. Neither presents evidence of a causal connection with the March 2014 Charge. Hale fails to establish an issue of fact for retaliation under the direct method.

Under the indirect method, Hale fails to present evidence on the fourth element of her prima facie case: that she was treated less favorably than similarly situated individuals who did not engage in protected activity. To be similarly situated, the other employees must be comparable in all material respects, including job duties, conduct, and level of experience. The employees usually must also share the same supervisor. Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000), overruled on other grounds, Ortiz, 834 F.3d at 765. See Greer v. Board of Education of City of Chicago, Ill., 267 F.3d 723, 728 (7th Cir. 2001); Patterson v. Avery Dennision Corp., 281 F.3d 676, 680 (7th Cir. 2002).

SIU presented evidence that since 2012, two other nurses at SIU in addition to Hale, D.H. and S.B., each had been subject to two separate suspensions. D.H. and S.B. were white and were not of Mexican heritage. Neither engaged in protected activity. Both voluntarily left SIU after the

second suspension.  S.B. left before she was eligible for retirement.  D.H. also was not eligible for retirement when she left SIU.  D.H., however, received disability leave through the Illinois State Universities Retirement System.  Doolin Declaration ¶¶ 27-28.  Both similarly situated employees left SIU after the two suspensions.  Neither received paid administrative leave until she reached retirement age.  Neither was treated better than Hale.  Hale failed to prove the fourth element of her prima facie case for retaliation under the indirect method.  SIU is entitled to summary judgment on the Title VII and § 1981 retaliation claim.

## POSSIBLE STATE LAW WHISTLEBLOWER CLAIM

The Plaintiff's complaint alleges she was a "Whistleblower" for her actions in reporting bed bugs and improper cleaning of surgical instruments.  (d/e 1, pg 4)

The Court notes that the facts underlying the Whistleblower Claim may or may not state a claim under Illinois law.   The Court makes no comment one way or the other over whether Hale's Whistleblower claim is viable under Illinois law.  This Court, however, generally relinquishes jurisdiction of claims based on state law if all the federal claims are resolved prior to trial. 28 U.S.C. § 1367(c)(3); see Sharp Electronics Corp. v. Metropolitan Life Ins. Co., 578 F.3d 505, 514 (7th Cir. 2009); Wright v.

Associated Ins. Companies, Inc., 29 F.3d 1244, 1251 (7th Cir. 1994)). The Court does so here and dismisses the Whistleblower Claim for lack of jurisdiction.

THEREFORE, IT IS ORDERED: Defendant Board of Trustees of Southern Illinois School of Medicine's Motion for Summary Judgment (d/e 21) is ALLOWED. This Court enters partial summary judgment in favor of Defendant Board of Trustees of Southern Illinois School of Medicine on all of Plaintiff Louise Hale's claims brought under Title VII and § 1981. This Court declines to exercise jurisdiction over Hale's Whistleblower Claim and dismisses the claim for lack of jurisdiction. All pending motions are DENIED as moot. THIS CASE IS CLOSED.

ENTER:   June 21, 2017

_____*s/ Tom Schanzle-Haskins*_____
UNITED STATES MAGISTRATE JUDGE